## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

**LARRY HORN,**

       **Plaintiff,**

v.                                                    **No. CIV-12-1211 LAM**

**CAROLYN W. COLVIN, Acting Commissioner**
**of the Social Security Administration,**

       **Defendant.**

## <u>MEMORANDUM OPINION AND ORDER</u>

      **THIS MATTER** is before the Court on Plaintiff's ***Motion to Reverse and Remand for a Rehearing, with Supporting Memorandum (Doc. 14)*** (hereinafter, "***Motion***"), filed July 16, 2013. In accordance with 28 U.S.C. § 636(c)(1) and Fed. R. Civ. P. 73(b), the parties have consented to the undersigned United States Magistrate Judge to conduct all proceedings and enter a final judgment in this case. *See* [*Docs. 4* and *6*]. On September 16, 2013, Defendant filed ***Defendant's Response to Plaintiff's Motion to Reverse and Remand for Rehearing (Doc. 15)***, and, on September 27, 2013, Plaintiff filed a ***Reply to Defendant's Response to Plaintiff's Motion to Reverse and Remand for a Rehearing (Doc. 16)*** and ***Notice of Completion of Briefing (Doc. 17)***. The Court has considered Plaintiff's motion, Defendant's response, Plaintiff's reply, and the relevant law. Additionally, the Court has meticulously reviewed and considered the entire administrative record. [*Doc. 10*]. For the reasons set forth below, the Court **FINDS** that Plaintiff's motion should

be **GRANTED** and the decision of the Commissioner of the Social Security (hereinafter "Commissioner") should be **REMANDED**.

## I.  Procedural History

On April 24, 2008, Plaintiff filed an application for Supplemental Security Income (hereinafter "SSI"), alleging that he became disabled on January 1, 2004.  [*Doc. 10-6* at 2-4].  On February 3, 2009, Plaintiff filed a second application for SSI, and an application for Disability Insurance Benefits (hereinafter "DIB"), alleging that he became disabled on June 4, 2008.  *Id.* at 11-18 and 19-20.  Plaintiff stated that he became disabled due to: "[l]ower back problems, carpal tunnel, arthritis, depression, severe degenerative cervical and lumbar spine disease, problems[ ]with body extensions."  [*Doc. 10-7* at 7].  Plaintiff's DIB application was denied at the initial level on February 8, 2009, and the reason given was that Plaintiff did not qualify for DIB because he has not worked long enough under Social Security.  [*Doc. 10-5* at 2-4].  It does not appear from the documents in the record that Plaintiff further pursued his DIB application.  Plaintiff's SSI application was denied at the initial level on April 29, 2009 (*id.* at 8-10), and at the reconsideration level on May 26, 2010 (*id.* at 16-18).  On August 1, 2011, Plaintiff's counsel sent a letter to the Social Security Administration stating that Plaintiff wishes to amend the onset date of his disability from January 1, 2004 to April 24, 2008.  [*Doc. 10-12* at 10-11].  Pursuant to Plaintiff's request (*see Doc. 10-5* at 20-22), Administrative Law Judge David R. Wurm (hereinafter "ALJ") conducted a hearing on August 5, 2011.  [*Doc. 10-3* at 30-60].  Plaintiff was represented by counsel and testified at the hearing.  *Id.* at 32 and 35-55.  Vocational Expert Mary Diane Weber (hereinafter "VE") also testified at the hearing.  *Id.* at 14 and 55-60.

On August 18, 2011, the ALJ issued his decision, finding that under the relevant sections of the Social Security Act, Plaintiff was not disabled prior to January 17, 2011, but became disabled on that date and continued to be disabled through the date of the ALJ's decision.  [*Doc. 10-3* at 14-25].  On September 13, 2011, Plaintiff requested that the Appeals Council review the ALJ's decision (*id.* at 8), and, on September 21, 2012, the Appeals Council denied Plaintiff's request for review (*id.* at 2-4), which made the ALJ's decision the final decision of the Commissioner.  On November 21, 2012, Plaintiff filed his complaint in this case, challenging the Commissioner's decision regarding Plaintiff's SSI benefits.  [*Doc. 1*].

## II.  Standard of Review

The standard of review in a Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether the correct legal standards were applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008) (citing *Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1497–98 (10th Cir. 1992)).  If substantial evidence supports the ALJ's findings and the correct legal standards were applied, the Commissioner's decision stands, and the plaintiff is not entitled to relief.  *See Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003).  Courts should meticulously review the entire record but should neither re-weigh the evidence nor substitute its judgment for that of the Commissioner.  *Hamlin*, 365 F.3d at 1214; *Langley*, 373 F.3d at 1118.

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Langley*, 373 F.3d at 1118 (citation and quotation marks

3

omitted); *Hamlin*, 365 F.3d at 1214 (citation and quotation marks omitted); *Doyal*, 331 F.3d at 760 (citation and quotation marks omitted).  An ALJ's decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Langley*, 373 F.3d at 1118 (citation and quotation marks omitted); *Hamlin*, 365 F.3d at 1214 (citation and quotation marks omitted).  While a court may not re-weigh the evidence or try the issues *de novo*, its examination of the record as a whole must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005) (citations omitted).  "The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ]'s findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

## III. Applicable Law and Sequential Evaluation Process

For purposes of SSI, a person establishes a disability when he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. § 416.905(a).  In light of this definition for disability, a five-step sequential evaluation process (SEP) has been established for evaluating a disability claim.  20 C.F.R. § 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987).  At the first four steps of the SEP, the claimant has the burden to show that:  (1) the claimant is not engaged in "substantial gainful activity;" and (2) the claimant has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has

4

lasted or is expected to last for at least one year; and either (3) the claimant's impairment(s) either

meet(s) or equal(s) one of the "Listings" of presumptively disabling impairments; or (4) the claimant

is unable to perform his "past relevant work." 20 C.F.R. § 416.920(a)(4)(i–iv); *Grogan*, 399 F.3d

at 1261. At the fifth step of the evaluation process, the burden of proof shifts to the Commissioner

to show that the claimant is able to perform other work in the national economy, considering his

residual functional capacity (hereinafter "RFC"), age, education, and work experience. *Grogan*,

399 F.3d at 1261.

## IV.  Plaintiff's Age, Education, Work Experience, and Medical History; and the ALJ's Decision

Plaintiff was born on April 17, 1956. [*Doc. 10-6* at 11]. Plaintiff testified that he "went to

the 12th grade" in school, and that he went to barber college for a year and a half. [*Doc. 10-3* at 35].

Plaintiff testified that he worked as a barber for 38 years. *Id.* Plaintiff alleges that he became

disabled due to: "[l]ower back problems, carpal tunnel, arthritis, depression, severe degenerative

cervical and lumbar spine disease, problems[ ]with body extensions." [*Doc. 10-7* at 7]. The

administrative record includes records from: We Care Chiropractic (*Doc. 10-9* at   2-7);

Robert A. Gardner, M.D. (*Doc. 10-9.* at 10, 12-15), (*Doc. 10-10* at 34), (*Doc. 10-11*

at 2-36, 40, 45, 59-60) and (*Doc. 10-12* at 5-9, 12-32); El Camino Imaging Center (*Doc. 10-9*

at 29-30), (*Doc. 10-11* at 41-42); John DeFlice, M.D. (*Doc. 10-11* at 37-38, 52-55); Duke City

Vascular Lab (*Doc. 10-11* at 39); Kaseman-Presbyterian Sleep Disorders Center (*Doc. 10-11*

at 43-44, 47-50, 56-58); Vincent Ortolano, M.D. (*Doc. 10-11* at 51); and New Mexico Human

Services Department (*Doc. 10-12* at 33-41). Plaintiff's medical records also include: a Consultative

Examination by Charles D. Mellon, M.D., dated April 9, 2009 (*Doc. 10-9* at 34-37); a Disability Determination Examination by Immanuel Amissah, M.D., dated April 11, 2009 (*Doc. 10-10* at 3-5); a Psychiatric Review Technique by Elizabeth Chiang, M.D., dated April 23, 2009 (*id.* at 6-19); a Mental Residual Functional Capacity Assessment by Elizabeth Chiang, M.D., dated April 23, 2009 (*id.* at 20-23); a Physical Residual Functional Capacity Assessment by N.D. Nickerson, M.D., dated April 28, 2009 (*id.* at 24-31); and two Case Analyses, one by Michael Finnegan, M.D., dated May 18, 2010 (*Doc. 10-12* at 2), and one by Donald Gucker, Ph.D., dated May 21, 2010 (*id.* at 3). Where relevant, Plaintiff's medical records are discussed in more detail below.

At step one of the five-step evaluation process, the ALJ found that Plaintiff had "not engaged in substantial gainful activity since the amended alleged onset date." [*Doc. 10-3* at 16]. At step two, the ALJ found that, since the amended alleged onset date of April 24, 2008, Plaintiff has had the following severe impairments: "degenerative disc disease of the cervical and lumbar spine, obstructive sleep apnea, and a depressive disorder." *Id.* At the third step, the ALJ found that since the amended alleged onset date of disability, Plaintiff did not have an impairment or combination of impairments that met or medically equaled any of the Listings found in 20 C.F.R. § 404, Subpt. P, Appx. 1 (20 C.F.R. §§ 416.920(d), 416.925 and 416.926). *Id.* at 16-17.

Before step four, the ALJ determined that Plaintiff has the RFC to perform light work, with the following exceptions: "he can only occasionally crouch, kneel, and crawl; he should never climb ropes, ladders, or scaffolds; he can only occasionally reach overhead; he should avoid heights and dangerous hazards; and he is limited to the mental demands of unskilled work." *Id.* at 17. In

support of the RFC finding, the ALJ stated that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Plaintiff's] characterization of the intensity, persistence and limiting effects of these symptoms is not credible to the extent they are inconsistent with the [ALJ's RFC] assessment." *Id.* at 18.  The ALJ stated that there is nothing in the record to support Plaintiff's testimony regarding carpal tunnel syndrome. *Id.* at 22.  With regard to Plaintiff's back problems and depression, the ALJ noted that Plaintiff stated in his Disability Report that he stopped working in 2003 because his business was sold and that, thereafter, he took care of his mother, who passed away in 2005, but did not mention that he was unable to work due to his illnesses. *Id.*  The ALJ further noted that Plaintiff testified that he had back problems since he was 18, but continued to work despite them, and that there is evidence in the record of repeated trips from New Mexico to Oklahoma by either car or bus, which is a 14-hour trip. *Id.*  The ALJ stated that "[i]t is not reasonable that someone suffering from debilitating symptoms such as [Plaintiff] has alleged could repeatedly make such trips." *Id.*  The ALJ also stated that Plaintiff's "appearance and demeanor while testifying at the hearing were generally unpersuasive." *Id.*

The ALJ stated that he discounted Dr. Gardner's opinion in his "Medical Assessment of Ability to do Work-Related Activities (Mental)" for several reasons, including: finding that Plaintiff himself apparently partially completed the form; Dr. Gardner wrote that it was not necessary for Plaintiff to avoid dealing with people, which contrasted with his finding of marked limitations for social interaction; Dr. Gardner marked both the "should avoid" and "not necessary to avoid" boxes in the area of influencing people in their opinions, attitudes, and judgments; Dr. Gardner found that

Plaintiff had moderate limitations using public transportation despite Dr. Gardner's records showing Plaintiff's repeated travel to Oklahoma by bus and car; Dr. Gardner relied heavily on the subjective report of symptoms and limitations provided by Plaintiff, and the ALJ had found that those subjective complaints were not completely reliable; Dr. Gardner wrote that Plaintiff had undergone physical therapy, but there are no such records in the record; and Dr. Gardner's opinion relies in part on an assessment of impairments outside his area of expertise. [*Doc. 10-3* at 22] (citing Dr. Gardner's report at *Doc. 10-12* at 5-9). The ALJ stated that he gave Dr. Mellon's opinion greater weight than he gave to Dr. Gardner's opinion, noting that Dr. Mellon is a board-certified psychiatrist and Dr. Gardner is a family practitioner. [*Doc. 10-3* at 22]. The ALJ noted Plaintiff's objections to Dr. Amissah's report, and stated that, even discounting Dr. Amissah's report, the remaining evidence still supports the ALJ's finding that Plaintiff is limited to light work. The ALJ also noted that the opinions of the other consulting state-agency physicians support a finding that Plaintiff is not disabled. *Id.* at 23. The ALJ stated that he considered the statements of Plaintiff's sister, and found that "her opinions depart substantially from the other evidence of record and cannot be fully credited." *Id.* At step four, the ALJ found that Plaintiff has been unable to perform his past relevant work, so the ALJ proceeded to the fifth step. *Id.*

At the fifth and final step, the ALJ stated that, prior to the alleged disability onset date, Plaintiff was approaching advanced age, and that, "[a]pplying the age categories non-mechanically, and considering the additional adversities in this case, on January 17, 2011, [Plaintiff's] age category changed to an individual of advanced age." *Id.* (citation omitted) The ALJ noted that Plaintiff has at least a high school education and is able to communicate in English. *Id.* The ALJ stated that,

8

prior to January 17, 2011, "[t]ransferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that [Plaintiff] was 'not disabled' whether or not [Plaintiff] has transferable job skills," and that, "[b]eginning on January 17, 2011, [Plaintiff] has not been able to transfer job skills to other occupations." *Id.* (citing Soc. Sec. Rep. 82-41 and 20 C.F.R. Part 404, Subpart P, Appendix 2). The ALJ found that, prior to January, 17, 2011, considering Plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could have performed. [*Doc. 10-3* at 23-24]. The ALJ stated that Plaintiff's ability to perform all or substantially all of the requirements of a full range of light work was impeded by additional limitations, so the ALJ asked the VE whether jobs exist in the national economy for an individual with Plaintiff's age, education, work experience, and RFC. *Id.* at 24. The ALJ stated that the VE testified that Plaintiff would have been able to perform the requirements of representative occupations such as: a ticket taker, a cleaner/polisher, and a silver wrapper. *Id.* The ALJ determined that the VE's testimony is consistent with the information in the Dictionary of Occupational Titles. *Id.* Based on the testimony of the VE, the ALJ concluded that, prior to the established onset date of disability, and considering Plaintiff's age, education, work experience, and RFC, Plaintiff was capable of making a successful adjustment to other work that existed in significant numbers in the national economy, so a finding of "not disabled" is appropriate prior to January 17, 2011, "the date [Plaintiff's] age category changed," under the framework of the Medical-Vocational Guidelines. *Id.* The ALJ further found that, beginning on January 17, 2011, there are no jobs that exist in significant numbers in the national economy that Plaintiff could

perform, so the ALJ determined that Plaintiff was "disabled."  In other words, the ALJ concluded that Plaintiff was not disabled prior to January 17, 2011, but became disabled on that date "by direct application of Medical-Vocational Rule 202.06" and "has continued to be disabled through the date of [the ALJ's] decision."  *Id.* at 24-25.

## V.  Analysis

Plaintiff contends that the ALJ erred for the following reasons: (1) the ALJ improperly determined Plaintiff's disability onset date at step five by arbitrarily choosing the onset date without explanation, and by failing to consult a medical advisor regarding the onset date in violation of Soc. Sec. Rep. 83-20; (2) the ALJ failed to afford Plaintiff's treating doctor's opinions sufficient weight and failed to afford the state-agency doctors' opinions appropriate weight; and (3) the ALJ failed to include in his RFC assessment an analysis of Plaintiff's limited ability to reach, Plaintiff's need to change position, and a function-by-function analysis. [*Doc. 14* at 13-23].  As relief, Plaintiff asks the Court to reverse and remand the case for a rehearing on these issues.  *Id.* at 23.  In his response, Defendant disputes Plaintiff's contentions, and states that the ALJ's decision was properly supported by the evidence in the record, and that the ALJ used correct legal standards in evaluating the evidence, so the Commissioner's final decision should be affirmed.  [*Doc. 15* at 4-11].

Plaintiff's first claim addresses the ALJ's finding at <u>step five</u> that Plaintiff was disabled starting on January 17, 2011, based on the ALJ's application of the Medical-Vocational Guidelines. Plaintiff's second and third claims, however, address the ALJ's findings at <u>step four</u> in making an RFC determination.  The Court, therefore, will first consider Plaintiff's step-four claims because,

if the Court finds that the case should be remanded based on the ALJ's RFC determination, Plaintiff's step-five claim may be affected by the ALJ's resolution of those issues on remand. *See Robinson v. Barnhart*, 366 F.3d 1078, 1085 (10th Cir. 2004) (declining to reach the claimant's step-five claims because they may be affected by the ALJ's resolution of the case on remand).

### A. The ALJ's Consideration of the Medical Evidence

### 1. Plaintiff's Treating Doctor's Opinions

Plaintiff contends that the ALJ erred in his analysis of the opinions of Plaintiff's treating doctor, Dr. Gardner. [*Doc. 14* at 15-17]. Specifically, Plaintiff states that the ALJ improperly stated that Dr. Gardner's opinion was based primarily on Plaintiff's subjective complaints, and that the ALJ failed to explain what weight, if any, he afforded Dr. Gardner's opinion. *Id.* In response, Defendant contends that the ALJ properly assessed Dr. Gardner's opinion. [*Doc. 15* at 4-5].

When "evaluating the medical opinions of a claimant's treating physician, the ALJ must complete a sequential two-step inquiry, each step of which is analytically distinct." *Krauser v. Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011); *see also Pisciotta v. Astrue*, 500 F.3d 1074, 1077 (10th Cir.2007). First, the ALJ "should consider whether the opinion is well supported by medically acceptable clinical and laboratory diagnostic techniques and is consistent with the other substantial evidence in the record." *Pisciotta*, 500 F.3d at 1077 (citations omitted). If the answer to both these questions is "yes," then the ALJ "must give the opinion controlling weight." If, however, the treating physician's opinion is not entitled to controlling weight, "the ALJ must then consider whether the opinion should be rejected altogether or assigned some lesser weight." *Id.* When a treating physician's opinion is not given controlling weight, it is still entitled to deference and must

be weighed using relevant factors such as: the length of treatment and frequency of examination, and

the nature and extent of the treating relationship; the extent to which the opinion is supported by

relevant evidence, particularly medical signs and laboratory findings; the extent to which the opinion

is consistent with the record as a whole; the doctor's specialization in the medical field upon which

an opinion is given; and other factors tending to support or contradict the opinion.  *See* 20 C.F.R.

§ 416.927(c).  Although the "ALJ must evaluate every medical opinion in the record [recognizing

that] the weight given each opinion will vary according to the relationship between the disability

claimant and the medical professional," ultimately, the ALJ's decision must contain "reasons that

are sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave

to the treating source's medical opinion and the reasons for that weight."  *Hamlin v. Barnhart*,

365 F.3d 1208, 1215 (10th Cir.2004) (citations and internal quotation marks omitted).

     Here, the ALJ found that Plaintiff has the RFC to perform light work, with the following

exceptions: "he can only occasionally crouch, kneel, and crawl; he should never climb ropes,

ladders, or scaffolds; he can only occasionally reach overhead; he should avoid heights and

dangerous hazards; and he is limited to the mental demands of unskilled work."  [*Doc. 10-3* at 17].

In support of this finding, the ALJ discussed Dr. Gardner's opinion in his "Medical Assessment of

Ability to do Work-Related Activities (Mental)," and gave that opinion "little weight" for several

reasons, including the following: a finding that Plaintiff apparently partially completed the form; Dr.

Gardner wrote that it was not necessary for Plaintiff to avoid dealing with people, which contrasted

with his finding of marked limitations for social interaction; Dr. Gardner marked both the "should

avoid" and "not necessary to avoid" boxes in the area of influencing people in their opinions,

12

attitudes, and judgments; Dr. Gardner found that Plaintiff had moderate limitations using public transportation despite Dr. Gardner's records showing Plaintiff's repeated travel to Oklahoma by bus and car; Dr. Gardner relied heavily on the subjective report of symptoms and limitations provided by Plaintiff, yet the ALJ explained elsewhere in the opinion that those subjective complaints were not completely reliable; Dr. Gardner wrote that Plaintiff had undergone physical therapy, but there are no such records in the record; and Dr. Gardner's opinion relies in part on an assessment of impairments outside his area of expertise.  *Id.* at 22 (citing Dr. Gardner's report at *Doc. 10-12* at 5-9).  The ALJ, however, failed to discuss Dr. Gardner's diagnoses of moderate to severe degenerative cervical and lumbar spine disease, depression, left scapula problems, and pelvic misalignment.  *See* [*Doc. 10-9* at 10] and [*Doc. 10-12* at 31].  The ALJ also failed to discuss Dr. Gardner's opinion that Plaintiff should not stand for longer than 30-40 minutes.  *Id.*  These diagnoses are not taken into account in the ALJ's RFC determination, and the ALJ failed to state why he rejected them.  The ALJ's failure to state whether he found that these opinions are well supported by medically acceptable clinical and laboratory diagnostic techniques, and whether they are consistent with the other substantial evidence in the record, is in error.  In addition, the ALJ's failure to state what weight he gave to these opinions is also in error.  The Court finds that the ALJ erred in failing to address all of Dr. Gardner's opinions, instead of focusing only on Dr. Gardner's opinion in the "Medical Assessment of Ability to do Work-Related Activities (Mental)," and in failing to state specifically the weight given to these opinions, and, therefore, this case should be remanded for the ALJ to consider all of Dr. Gardner's opinions in compliance with the legal requirements of *Pisciotta*, 500 F.3d at 1077, and 20 C.F.R. § 416.927(c).

### 2. Examining and Consulting Doctors' Opinions

Plaintiff also contends that the ALJ erred by giving more weight to Dr. Amissah's opinion than he did to Dr. Gardner's opinion because Dr. Amissah was an examining doctor, not a treating doctor.  [*Doc. 14* at 17].  Plaintiff states that Dr. Amissah's findings were made without the benefit of x-rays that were taken a few days before he examined Plaintiff, and Plaintiff contends that these x-rays cast doubt on Dr. Amissah's statement that no objective findings support Plaintiff's allegations and undermine Dr. Amissah's finding of no functional limitation.  *Id.*  The Court finds that this contention is without merit because it appears that the ALJ did not give any weight to Dr. Amissah's opinion, stating that, "[e]ven discounting Dr. Amissah's report, the remaining evidence still supports a limitation to light work."  [*Doc. 10-3* at 22].  The ALJ then proceeded to discuss the x-rays upon which Plaintiff relies, and noted that a "[s]ubsequent MRI of the lumbar spine in May of 2009 showed no evidence of spinal canal stenosis and only moderately severe bilateral bony foraminal stenosis," and that "[t]his objective evidence supports [Plaintiff's] physical ability to perform a limited range of light work."  *Id.* at 23.  The Court, therefore, finds that Plaintiff's contention is without merit because the ALJ did not give Dr. Amissah's opinion more weight than any other opinion, and because the ALJ considered, and rejected, the x-rays Plaintiff contends were ignored.

Plaintiff's next contention is that the ALJ erred by failing to account in Plaintiff's RFC for the findings of state-agency psychiatrist, Dr. Mellon, regarding Plaintiff's abilities to carry out instructions, work without supervision, interact with supervisors, and adapt to changes in the workplace.  [*Doc. 14* at 18].  Plaintiff contends the ALJ did not comply with Soc. Sec. Rep. 96-6p

by failing to properly consider Dr. Mellon's findings.  *Id.*  In response, Defendant contends that the ALJ's limitation to the mental demands of unskilled work in Plaintiff's RFC determination properly accounts for Dr. Mellon's findings.  [*Doc. 15* at 6].  The Court finds that Plaintiff's contention has merit.  While the ALJ stated that he adopted Dr. Mellon's opinions that Plaintiff had no limitations with very short and simple instructions, and mild limitations in his ability to attend and concentrate and interact with the public and co-workers, the ALJ did not discuss or assign any weight to Dr. Mellon's opinions that Plaintiff is moderately limited in his ability to work without supervision, interact with supervisors, and adapt to changes in the work place.  *Compare* [*Doc. 10-3* at 22] *with* [*Doc. 10-9* at 37].  The Court finds that this is in error because "[a]n ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding or nondisability," without explaining his reasoning.  *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007) (finding that "the ALJ should have explained why he rejected four of the moderate restrictions on [a consulting mental health professional's] RFC assessment while appearing to adopt the others") (citation omitted); *see also Frantz v. Astrue*, 509 F.3d 1299, 1302-03 (10th Cir. 2007) (finding that the ALJ erred by accepting some of the moderate restrictions in a mental RFC form, but omitting other moderate restrictions without discussion); and *Wilson v. Colvin*, No. 13-5016, 2013 WL 5630925, at *4 (10th Cir. Oct 16, 2013) (unpublished) (stating that "[i]f the ALJ intended to omit from [the claimant's] RFC the doctor's moderate restrictions regarding her ability to adapt to a usual work setting and any changes in it, the ALJ should explain his reasons for doing so, as well as the weight he assigns to the opinion).  Defendant does not cite to any authority that provides that an ALJ is not required to explain the rejection of medical evidence when the ALJ restricts a

claimant to unskilled work, and such an argument contradicts Soc. Sec. Rep. 96-6p, which states that ALJs are not bound by, but also they may not ignore the findings made by state-agency physicians "and must explain the weight given to the opinions in their decisions."  1996 WL 374180, at *2.  On remand, the ALJ shall either incorporate the restrictions from Dr. Mellon's opinion in his RFC determination, or explain why he rejected them.

Plaintiff next contends that the ALJ erred by giving some weight to the opinion of non-examining physician, Dr. Finnegan, because Dr. Finnegan's characterization of the x-ray evidence is inaccurate.  [*Doc. 14* at 19].  Defendant contends that the Court may not re-weigh the ALJ's interpretation of the evidence.  [*Doc. 15* at 7].  The Court finds that Plaintiff's contention is without merit.  "The RFC assessment must always consider and address medical source opinions," and "[i]f the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted."  Soc. Sec. Rep. 96-8p, 1996 WL 374184 at *7.  Here, the ALJ found that the non-examining physicians' conclusions support a finding that Plaintiff is not disabled, and the ALJ gave those opinions "some weight."  [*Doc. 10-3* at 23].  The ALJ, therefore, considered Dr. Finnegan's opinion that the medical evidence supports a light RFC (*see Doc. 10-12* at 2), and the ALJ's RFC determination is consistent with this opinion.  The Court does not agree with Plaintiff's contention that this was error because Dr. Finnegan mis-characterized the x-ray evidence, because the ALJ explicitly addressed the x-ray evidence in his decision, and noted that a "[s]ubsequent MRI of the lumbar spine in May of 2009 showed no evidence of spinal canal stenosis and only moderately severe bilateral bony foramina stenosis," and stated that this evidence supports a finding of a limited range of light work.  [*Doc. 10-3* at 23].  The Court, therefore, finds

16

that the ALJ did not err in giving Dr. Finnegan's opinion "some weight" since the ALJ considered

the x-ray evidence Plaintiff contends was mis-characterized by Dr. Finnegan and explained why he

rejected that evidence.  Moreover, the Court cannot re-weigh the evidence or substitute its judgment

for that of the agency.  *See Kelley v. Chater*, 62 F.3d 335, 337 (10th Cir. 1995) (citation omitted).

### B.  The ALJ's RFC Determination

In the section setting forth Plaintiff's third contention, Plaintiff makes the following

arguments: the ALJ failed to include Dr. Gardner's opinion that Plaintiff is unable to stand or walk

for prolonged periods; the ALJ failed to ask the VE whether the jobs that the VE testified that

Plaintiff can perform require overhead reaching; the ALJ failed to discuss Dr. Gardner's opinion that

Plaintiff could not work full time; the ALJ failed to address the inconsistency between Dr. Chiang's

conclusion and the conclusions of Dr. Gardner and Dr. Mellon regarding Plaintiff's ability to interact

adequately with co-workers and supervisors and respond appropriately to changes in a work setting;

and that the ALJ  erred by failing to provide a function-by-function analysis in the RFC, and failed

to discuss the exertional components of sedentary work on a sustained basis.  [*Doc. 14* at 20-23].

The Court has addressed several of these contentions in its discussion above regarding the ALJ's

failure to appropriately consider the opinions of Dr. Gardner and Dr. Mellon, and has found that the

ALJ must properly consider these opinions on remand.  The Court finds that it is unnecessary to

address these contentions again to the extent that they overlap with the Court's previous findings.

Finally, the Court also declines to address Plaintiff's remaining contentions regarding the VE's

hypothetical at step five, the requirement for a function-by-function analysis, and the exertional

components of sedentary work, as well as Plaintiff's first contention that the ALJ erred at step five

in finding that Plaintiff was disabled beginning on January 17, 2011, because those findings may

change on remand with the ALJ's reconsideration of Plaintiff's RFC.   *See Robinson*,

366 F.3d at 1085 (declining to reach the claimant's step-five claims because they may be affected

by the ALJ's resolution of the case on remand) and *Lopez v. Astrue*, No. 09-2187,

371 Fed. Appx. 887, 892 n.6, 2010 WL 1172610 (10th Cir. March 29, 2010) (unpublished) (after

finding that the ALJ erred by failing to articulate what weight she gave to the treating physicians'

opinions, the Tenth Circuit declined to reach claims regarding the ALJ's reliance on the VE's

testimony, the ALJ's credibility assessment, and the claimant's subjective complaints of pain,

because those issues may be affected by the ALJ's treatment of the case on remand) (citing

*Robinson*, 366 F.3d at 1085).

## VI.  Conclusion

**IT IS THEREFORE ORDERED** that, for the reasons stated above, Plaintiff's ***Motion to***

***Reverse and Remand for a Rehearing, With Supporting Memorandum*** *(Doc. 14)* is **GRANTED**

and this case is **REMANDED** to the Commissioner for further proceedings consistent with this

Memorandum Opinion and Order.   A final order will be entered concurrently with this

Memorandum Opinion and Order.

**IT IS SO ORDERED.**

_Lourdes A. Martínez_
**THE HONORABLE LOURDES A. MARTÍNEZ**
**UNITED STATES MAGISTRATE JUDGE**
**Presiding by Consent**

18